The Honorable Paul Bookout State Senator
1900 West Washington Jonesboro, Arkansas 72401-2577
Dear Senator Bookout:
You have requested my opinion concerning a millage levied by the City of Jonesboro for the purpose of paying firefighters' pensions. As background for your specific question, you report:
 It is my understanding in 1950 the City of Jonesboro increased a millage for the private firefighters pension for retired firemen to one mill per dollar of assessed valuation of all real and personal property lying and situated in the City of Jonesboro for the year 1950. The monies were collected in 1951. The goal was to raise approximately $7,000,000 for the pension. Currently, this money is being held in the general fund account of the City of Jonesboro and questions have been raised about the legality of the commingling of these funds with the general city revenues.
Against this background, you ask:
 Is it legal for the funds resulting from the millage for retired firefighters' pension to be included in the general fund of the City of Jonesboro? *Page 2 
RESPONSE
If, as the background information you have supplied appears to suggest, by "included in the general fund" you mean the millage revenues are being commingled with general revenues and thereby diverted to purposes other than fire pension purposes, then in my opinion the answer to your question is clearly "no." As explained further below, these millage revenues plainly are to be used solely for pension purposes.[1]
It is possible, however, that the focus of your concern is the reported fact that the millage revenues are "being held in the general fund account," the question being whether this action is legal without regard to any actual diversion of the revenues. In my opinion, this may require a factual determination as to whether the City has complied with the relevant provisions of A.C.A. § 24-11-804, which applies to an "inactive" local fire pension and relief fund.[2] It is my understanding that the pension fund at issue is "inactive" as contemplated by section 24-11-804. It will be helpful in framing the possible issue at hand to review the procedures that govern the fund's assets.
Administrative responsibility for such an "inactive" pension fund lies with the Arkansas Local Police and Fire Retirement System (LOPFI).[3] Under the applicable procedures, a retirement reserve is computed for the payment of benefits to current and future recipients, and this reserve is transferred to LOPFI for the purpose of paying the local fund's eligible beneficiaries.[4] Of particular significance for purposes of your question is the following requirement with respect to "excess assets of the fund": *Page 3 
 Any excess assets of the fund remaining after the retirement reserve is created shall be transferred to an account designated by the employer, to be used solely for the purpose of making payments to the system for employee coverage administered under the system, and for no other purpose.[5]
A similar requirement applies with respect to any millage that continues to be collected after a local pension fund becomes inactive and a retirement reserve is created:[6]
 The revenues shall be deposited locally in an account designated by the employer solely for making payments to the system for employee coverage administered under the system, and for no other purpose.[7]
These statutory provisions clearly require that pension fund millage revenues held by the City be kept in a designated account and used only for making the requisite payments to LOPFI. Somewhat less clear is whether the statute governs where or how this designated account is to be maintained. Subsection 24-11-804(b)(2) simply requires that the assets be placed in "an account designated by the employer." Subsection 24-11-804(b)(4)(B) states that the revenues are to be held "in an account designated by the employer solely for making payments to [LOPFI]." Arguably, the principal requirement is that the millage revenues be accounted for through a designation that provides for their proper identification and use. Whether this can be accomplished under a scenario in which the revenues are "included in the general fund," as your question posits, may require a review of the City's particular accounting practices; and may be a question for the legislative auditors at the Division of Legislative Audit or other appropriate officials. *Page 4 
While I am therefore unable to opine definitively on your question, the above discussion should assist in identifying the attendant issues and framing the factual review.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General DM:EAW/cyh
[1] See A.C.A. § 24-11-804(b)(2) and (4)(B) (Supp. 2009) (requiring use of millage revenues solely for making necessary employer contributions). See also Op. Att'y Gen. 2007-050 ("Where voters levy a millage to support police or fire pensions, in my opinion the funds may not be constitutionally diverted by the General Assembly or municipalities to another purpose.").
[2] Id. at (a)(1) (Supp. 2009) ("In those local fire pension and relief funds that cover fewer than five (5) members, a local board of trustees may no longer exist, and the fund shall be designated as inactive by the employer.").
[3] Id. at (b).
[4] Id. at (b)(1).
[5] Id. at (2) (emphasis added).
[6] See id. at (b)(4)(A) ("Once a fund becomes inactive and a retirement reserve is created as required by this section, the employer may continue to collect such millages, state insurance tax turnback, and other revenues allowed by law for the support of firefighter retirement programs.").
[7] Id. at (B) (emphasis added).